IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jessica R. Pease, | ) | C/A No. 0:08-3498-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 DSC and 28 U.S.C. § 636(c) for final adjudication of the plaintiff's petition for judicial review upon consent of the parties. The plaintiff, Jessica R. Pease ("Pease"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On May 17, 2005, Pease applied for SSI and DIB. Pease's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 25, 2008 at which Pease appeared and testified and was represented by Christi B. McDaniel, Esquire. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated April 25, 2008 finding that Pease was not disabled.

Pease was thirty-six years old at the time of the ALJ's decision. She completed high school and some college and has past relevant work experience as a waitress/bartender, receptionist, sales associate, print tech, and fast food worker. (Tr. 70-72, 106.) Pease alleges disability since April 29,

2001 due to a compression fracture at the L2 vertebrae, affective (Bipolar) disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, trochanteric bursitis with resulting right shoulder pain, attention deficit disorder ("ADD"), bilateral sacroiliitis, muscle contracture headaches, sleep disorder with fatigue, gastroesophageal reflux disease, and irritable bowel syndrome. (Tr. 19, 80, 446-47.)

The ALJ made the following findings and conclusions:

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2.      The claimant has not engaged in substantial gainful activity since April 29, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
                                    *     *     *
3.      The claimant has the following severe impairments: history of compression fracture at L2 in July 2001, carpal tunnel syndrome, affective disorder (Bipolar), features of post traumatic stress disorder (PTSD), and borderline personality disorder (20 CFR 404.1520(c) and 416.920(c)).
                                    *     *     *
4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, with only occasional fingering due to carpal tunnel syndrome. Her mental impairments and associated symptoms limit the claimant to simple, routine work with the need to avoid large crowds in the workplace, and the need to work alone or in small groups of co-workers. She should not engage in production or piece rate jobs, and she should not be required to wait on customers, either in person or by telephone.
                                    *     *     *
6.      The claimant was born on March 3, 1971 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

*PJG*

8.   Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

*   *   *

10.  The claimant has not been under a disability, as defined in the Social Security Act, from April 29, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-26.)

On September 24, 2008, the Appeals Council denied Pease's request for review, making the decision of the ALJ the final action of the Commissioner. Pease filed this action on October 15, 2008.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

PJG

(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind
        of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant

is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return

to her past relevant work because of her impairments. Once the claimant establishes a prima facie

case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner

must establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national

economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d

866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v.

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by

obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.

1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.

However, this review is limited to considering whether the Commissioner's findings "are supported

by substantial evidence and were reached through application of the correct legal standard." Craig

v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's

decision is supported by substantial evidence and whether the correct law was applied. See Myers

v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant

PJG

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

Pease essentially alleges that the ALJ erred in (1) failing to address the severity of Pease's trochanteric bursitis with resulting right shoulder pain, attention deficit disorder, bilateral sacroiliitis, muscle contracture headaches, sleep disorder with fatigue, gastroesophageal reflux disease, and irritable bowel syndrome and to consider these impairments in determining Pease's residual functional capacity; (2) failing to find that Pease met the requirements of Listing 12.04 and 12.08; (3) discounting the opinion of Pease's treating psychiatrist, Dr. Cecilia Farina-Morin; and (4) providing a defective hypothetical to the vocational examiner.

## DISCUSSION

### A.      Dr. Farina-Morin

The majority of Pease's arguments in this matter hinge on the weight the ALJ gave to the opinion of Pease's treating psychiatrist.  Therefore, the court will consider Pease's assertion that the ALJ erred in discounting Dr. Farina-Morin's opinion before addressing Pease's remaining issues.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v.

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is

evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has

examined the applicant, (2) the treatment relationship between the physician and the applicant, (3)

the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and

(5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)

(citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the

discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171,

178 (4th Cir. 2001).

> In this case, the ALJ concluded that
>
> Dr. Farina-Morin's opinion is not supported by her own records or by the other substantial evidence of record.  In addition, the records indicate that the claimant was last seen by Dr. Farina-Morin on September 11, 2006, clearly showing that it has been well over one year since the claimant was seen by her.

(Tr. 20.)  Based on the record before the court, it appears that Pease received treatment from Dr.

Farina-Morin, of McLeod Psychiatric Associates, from October 2005 until December 2007 when Dr.

Farina-Morin terminated Pease as a patient due to her failure to comply with scheduled

appointments.  (See Tr. 237-39, 415.)  In the termination summary, Dr. Farina-Morin opines that

Pease "made little progress during her treatment."  (Tr. 415.)  After summarizing recent treatment

issues and Pease's current diagnoses, Dr. Farina-Morin states that

> [b]ecause of her psychiatric problems, Ms. Pease has trouble with relationships and her depression makes it difficult for her to follow-through with tasks.  It is my professional opinion that Ms. Pease will have a great deal of difficulty getting and keeping employment, or completing schooling or training, with her current degree of symptoms.  I think her prognosis is very guarded and therefore see her as not likely to be able to work now or in the future.

(Id.)

Pease argues, and the Commissioner concedes, that the ALJ erred in discounting Dr. Farina-Morin's opinion based on his determination that Pease was last seen by Dr. Farina-Morin on September 11, 2006. A review of the record reveals that Dr. Farina-Morin and McLeod Psychiatric Associates continued to treat Pease in late 2006 and in 2007. (See, e.g., Tr. 298-320.)

Pease further argues Dr. Farina-Morin's opinion was supported by her records and was consistent with the medical observations by the other physicians in this case. In response, the Commissioner argues that the ALJ correctly noted that only "a treating physician's *medical* opinion is entitled to special significance" and that portions of Dr. Farina-Morin's opinion include conclusions regarding issues that are specifically reserved for the Commissioner, such as whether a claimant is disabled or unable to work. (Def.'s Br. at 26) (citing Tr. 20 & S.S.R. 96-5p, 1996 WL 374183 at *2, 5). The regulations specifically provide that questions whether a claimant is "disabled" or "unable to work" are reserved to the Commissioner and, therefore, the Commissioner will not provide any special significance to physician opinions on these issues. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Here, the ALJ apparently discounted the entirety of Dr. Farina-Morin's opinion, which included her conclusions that Pease has made little progress in two years of treatment, has trouble with relationships and following though with tasks, and that her symptoms would cause her great difficulty and are not likely to improve. The ALJ based his rejection of Dr. Farina-Morin's opinion on his determination that her opinion was not supported by her own records or by the other substantial evidence of record. However, the ALJ made this conclusory statement without any additional discussion. Therefore, it is unclear upon what "persuasive contrary evidence" the ALJ rejected Dr. Farina-Morin's medical opinion. See Mastro, 270 F.3d at 178. Moreover, the only other reason the ALJ provided for rejecting Dr. Farina-Morin's opinion is conceded to be inaccurate, as

the Commissioner acknowledges that the ALJ's finding that Pease was last seen Dr. Farina-Morin in September 2006 was incorrect. While the Commissioner attempts to provide the court with evidence that would support the ALJ's conclusion, such *post hoc* rationalization is generally prohibited. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steel v. Barnhart, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). Accordingly, the court is compelled to conclude that the ALJ's conclusion is not supported by substantial evidence. Therefore, this matter must be remanded for further consideration of Dr. Farina-Morin's opinion.

**B.    Impairments**

It appears that Pease's counsel submitted a pre-hearing brief to the ALJ alleging the following severe impairments: depression/dysthymia; anxiety with panic attacks; borderline personality disorder; impaired short term memory and concentration; post traumatic stress disorder; chronic back pain; old compression fracture L2; trochanteric bursitis right, right shoulder pain; bilateral sacroiliitis; muscle contracture headaches; bilateral carpal tunnel syndrome, left worse than right; and sleep disorder with fatigue. (Tr. 147.) Pease also alleged non-severe impairments of gastroesophageal reflux disease and irritable bowel syndrome. (Id.) The ALJ in addressing Pease's impairments found that she had following severe impairments: "history of compression fracture at L2 in July 2001, carpal tunnel syndrome, affective disorder (Bipolar), features of post traumatic stress disorder (PTSD), and borderline personality disorder." (Tr. 19.)

Pease contends that the ALJ failed to address the severity of—or make any findings with regard to—numerous alleged impairments, specifically her trochanteric bursitis with resulting right shoulder pain, attention deficit disorder, bilateral sacroiliitis, muscle contracture headaches, sleep disorder with fatigue, gastroesophageal reflux disease, and irritable bowel syndrome. Pease further argues that as a result of these omissions, there is no indication that the ALJ considered these alleged impairments in determining her residual functional capacity. In responding to this contention, the Commissioner appears to misconstrue Pease's argument as simply asserting that the ALJ erred in failing to find the above listed impairments as severe and argues that Pease failed to meet her burden to show that each of these impairments was severe. (Def.'s Br. at 18-21, Docket Entry 16.) Additionally, the Commissioner asserts that trochanteric bursitis is bursitis of the hip rather than the shoulder and that there is no indication that Pease has been diagnosed with bursitis of the shoulder. (Id. at 18-19.) The Commissioner also argues that attention deficit disorder ("ADD") was not even listed by Pease as an alleged impairment in her pre-hearing brief, that her medical records contain only one reference to ADD, and that during the hearing Pease mentioned that Dr. Farina-Morin was *considering* a possible ADD diagnosis. Finally, the Commissioner argues that even if the ALJ erred, such error was harmless because the ALJ stated that he considered the "entire record" in determining Pease's residual functional capacity. (Id. at 21.)

The crux of Pease's argument appears to be that the ALJ never even addressed six of her fourteen alleged impairments, not simply that he failed to find them severe. As the ALJ failed to address many of these impairments, the court is unable to determine whether the ALJ's conclusion

*PJG*

that Pease is not disabled is supported by substantial evidence.[1]  A brief boilerplate statement that the ALJ considered the entire record is insufficient for the court to conclude that this error was harmless.  Therefore, this issue is remanded to the Commissioner for further administrative action.  However, the court agrees that trochanteric bursitis is bursitis of the hip and notes that it is unclear how this would impact Pease's right shoulder.  See Taber's Cyclopedic Medical Dictionary 2241 (20th ed. 2005) (defining "trochanteric" as "rel[ating] to a trochanter" and "trochanter" as "[e]ither of the two bony processes below the neck of the femur"); (see also Def.'s Br. at 19, Docket Entry 16.)  Accordingly, on remand Pease should clarify this issue for the Commissioner if he deems it necessary.  Moreover, it does not appear that the issue of whether Pease has the impairment of ADD was properly presented to the ALJ; therefore, that alleged impairment need not be considered on remand.  Therefore, on remand the Commissioner should consider all of the impairments raised by Pease before the ALJ, determine whether they are severe or non-severe impairments, and, if necessary, reconsider Pease's residual functional capacity accordingly.

## C.      Remaining Issues

The evaluation of Dr. Farina-Morin's opinion will necessarily affect the ALJ's determination of whether Pease meets a Listing as well as the subsequent steps of the sequential process.  Therefore, the court cannot say that the ALJ's determination of whether Pease meets or medically equals the criteria of Listing 1.04, 12.04, or 12.08, or his determination on the remainder of the sequential process, is supported by substantial evidence.  Further, the ALJ's reconsideration of the above issues may render Pease's remaining issues moot.  See Boone v. Barnhart, 353 F.3d 203, 211

---

[1]The court observes that even non-severe impairments can, in combination, be disabling. See SSR 96-8p ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").

PJG

n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional

arguments).

**ORDER**

The court cannot conclude based on the record before it that the Commissioner's decision

is supported by substantial evidence. Therefore, the Commissioner's decision is reversed pursuant

to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and this matter is remanded to the

Commissioner for further administrative proceedings as outlined above.

**IT IS SO ORDERED.**

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 1, 2009
Columbia, South Carolina